K257BLAS

1   UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
2   ------------------------------x

3   UNITED STATES OF AMERICA,

4              v.                              17 Cr. 563 (ER)

5   LOUIS MARTIN BLAZER,

6              Defendant.

7   ------------------------------x
                                              New York, N.Y.
8                                             February 6, 2020
                                              10:00 a.m.
9

10  sBefore:

11                   HON. EDGARDO RAMOS
                                              District Judge
12

13                        APPEARANCES

14  GEOFFREY S. BERMAN
         United States Attorney for the
15       Southern District of New York
    BY:  ROBERT BOONE
16       ELI MARK
         Assistant United States Attorneys
17
    MARTIN DIETZ
18       Attorney for Defendant

19

20

21

22

23

24

25

K257BLAS

1          (In open court)

2          (Case called)

3          MR. BOONE:  Good morning, your Honor.  Robert Boone

4    for the government, and here with me at counsel table is AUSA

5    Eli Mark.

6          THE COURT:  Good morning.

7          MR. DIETZ:  Good morning, your Honor.  Martin Dietz on

8    behalf of Louis Martin Blazer, and Mr. Blazer is seated to my

9    right.

10         THE COURT:  And good morning to you all.  This matter

11   is on for sentencing, and in preparation for today's

12   proceedings I have reviewed the following:  I have reviewed the

13   presentence report that was last revised on February 5, 2020.

14   I take it the parties have all gotten a copy of the latest

15   version.

16         MR. DIETZ:  Yes, your Honor.

17         THE COURT:  And that report was prepared by U.S.

18   probation officer James Mullen, and it includes a

19   recommendation.

20         I have also reviewed the letter submitted by Mr. Dietz

21   filed on January 30 of this year, which includes letters

22   submitted by various of Mr. Blazer's family and friends and

23   business associates, and the government's letter dated January

24   30, 2020, in which it indicates its intention to move pursuant

25   to United States sentencing guideline 5K1.1.

K257BLAS

1          Is there anything else that I should have received or

2    reviewed, Mr. Boone?

3               MR. BOONE:  No, your Honor.

4               THE COURT:  Mr. Dietz?

5               MR. DIETZ:  Your Honor, the only question I would have

6    is I'm not sure whether the Court actually received the letter

7    from the NCAA.  I had received communications from the NCAA

8    that they had forwarded the Court a letter.

9               THE COURT:  I have not received a letter from the

10   NCAA.

11              Mr. Boone, have you seen this letter?

12              MR. BOONE:  I have seen it in the press.  It was never

13   sent to our office.

14              THE COURT:  OK.  Mr. Dietz, do you have a copy of that

15   letter?

16              MR. DIETZ:  I do, your Honor.

17              THE COURT:  Do you want to hand it up.

18              OK.  I have reviewed this letter.  Anything else, Mr.

19   Dietz?

20              MR. DIETZ:  No, your Honor.  But I apologize.  They

21   led me to believe it was sent directly to you.

22              THE COURT:  It may have been.  I have not seen it.

23   It's dated January 31, 2020, so I don't know when they put it

24   in the mail and whether it's wending its way through our mail

25   system in the building, but I have reviewed it.  Anything else,

K257BLAS

Mr. Dietz?

MR. DIETZ:  No, your Honor, I believe that's the submissions.

THE COURT:  Mr. Dietz, have you read the presentence report and discussed it with your client?

MR. DIETZ:  I have, your Honor.

THE COURT:  And, Mr. Blazer, have you read the presentence report and discussed it with Mr. Dietz?

THE DEFENDANT:  I have, your Honor.

THE COURT:  Are there any additional questions regarding its factual accuracy?

MR. DIETZ:  Nothing as it relates to the sentencing guidelines, Judge.  I believe Mr. Boone has a couple minor factual corrections that he would like to address with the Court, and we have no opposition to those.

THE COURT:  Very well.

Mr. Boone?

MR. BOONE:  Yes, your Honor, just a few --

THE COURT:  We're referring to the February 5 version, correct?

MR. BOONE:  That's correct, your Honor.

THE COURT:  OK.

MR. BOONE:  So I just have a few comments that I would like the Court to at least consider mostly for clarity's sake, nothing particularly earth shattering.

K257BLAS

1          THE COURT:  OK.

2          MR. BOONE:  I am looking at what is numbered as

3     paragraph 10.  If you notice, paragraphs 10 and 11 refer to

4     sentencings of Code and Dawkins, but there is no reference to

5     the sentencing that your Honor actually imposed pursuant to the

6     trial we've had in 2019.  So, my suggestion is we could add a

7     sentence to make that clear, something along the lines of the

8     fact that for Code he was also convicted at trial before your

9     Honor of Count One in the indictment S1 17 Cr. 684 and was

10    subsequently sentenced by your Honor to three months'

11    imprisonment on that count, to be served consecutively with the

12    term of imprisonment imposed by Judge Kaplan in the case 17 Cr.

13    686.

14          THE COURT:  OK.

15          MR. BOONE:  Similarly, your Honor, for Christian

16    Dawkins we would suggest having a sentence that says something

17    to the effect that Dawkins was also convicted following a trial

18    before your Honor to Counts One and Two of S1 17 Cr. 684 and

19    was subsequently sentenced by your Honor to a term of

20    imprisonment of one year and one day, to run concurrently with

21    the terms of imprisonment imposed relating to case 17 Cr. 686.

22          THE COURT:  Very well.

23          I take it you have no objection, Mr. Dietz.

24          MR. DIETZ:  No objection.

25          THE COURT:  OK.  Mr. Boone?

K257BLAS

1          MR. BOONE:  Another more minor correction.  If you

2   notice, paragraph 13 discusses the sentencing of defendant

3   Shawn Luchelle.  It looks to me that paragraph 17 is the exact

4   same sentence, so my suggestion would be to remove one of those

5   paragraphs.

6          THE COURT:  Let's take out 17.  OK.

7          MR. BOONE:  Your Honor, perhaps a slightly bigger

8   suggestion is if you look at paragraphs 21 through 53, they

9   attempt to describe some of Blazer's cooperation.  In reading

10   it, it's not clear from the reading that it actually is

11   proactive cooperation.  It sort of reads as if it's his actual

12   offense conduct.  I have sort of two ways that might be able to

13   cure this.  One would be to simply remove those paragraphs,

14   paragraphs 21 through 53, and then his offense conduct would

15   begin with paragraph 54 which discusses the misappropriation of

16   client funds and his own payment of players, which is what he

17   was convicted of.

18          Alternatively, we could also simply insert a sentence

19   likely before say paragraph 42 that just makes it clear that at

20   the direction of law enforcement Blazer committed the following

21   actions among others pursuant to his cooperation with the

22   government, and then he goes on to describe some of that

23   cooperation.

24          THE COURT:  Before paragraph 42?

25          MR. BOONE:  Correct.

K257BLAS

1          THE COURT:  And so you want to say that again.  At the

2     direction of law enforcement --

3          MR. BOONE:  -- Blazer committed the following actions,

4     among others, pursuant to his cooperation with the government.

5          THE COURT:  Any objection to that, Mr. Dietz?

6          MR. DIETZ:  No, your Honor.

7          THE COURT:  I am more comfortable with that second

8     suggestion.

9          MR. BOONE:  Understood.

10          THE COURT:  What else, Mr. Boone?

11          MR. BOONE:  On paragraph 54 -- this is very minor --

12     it reads Blazer made payments to numerous -- I'm sorry, I can

13     wait.

14          THE COURT:  I'm there.

15          MR. BOONE:  Blazer made payments to numerous college

16     athletes while they were student athletes to pursue them.

17          I think the author meant to say to persuade them to

18     hire him.

19          THE COURT:  OK.

20          MR. BOONE:  Next, paragraph 55, first sentence, I

21     believe the author meant that from between 2009 and 2013 Blazer

22     acted as a financial advisor to professional athletes.

23          THE COURT:  OK.

24          MR. BOONE:  The next sentence -- it might be helpful

25     for me just to read what I think sort of the next two sentences

K257BLAS

1   should say.  I think there is some sort of wording that's a

2   little off.

3            THE COURT:  Let me just read them first.

4            MR. BOONE:  OK.

5            THE COURT:  OK.

6            MR. BOONE:  So, speaking broadly, I think the issue is

7   it's not sort of clearly defining the misappropriation.  My

8   suggestion for the second sentence would be the following:

9   "During that time period, Blazer misappropriated $2.3 million

10  of his clients' money by investing their money in various movie

11  and music ventures without their authorization."

12           THE COURT:  OK.

13           MR. BOONE:  And then the only other correction on this

14  section would be for that next sentence, which is the third

15  sentence.  I would have it begin with "For example, Blazer

16  pitched a movie project to an athlete."

17           THE COURT:  Any objection, Mr. Dietz?

18           MR. DIETZ:  No, your Honor.

19           THE COURT:  OK.

20           MR. BOONE:  Another thing I want to point out,

21  although I think -- I'm sorry.  Let me just find my place.  I

22  think it's more something I want to point out but not

23  necessarily suggest a correction.  It's a part of the paragraph

24  where the probation officer is writing his justification for

25  his recommendation, so it's more sort of his editorializing.

K257BLAS

1       But I'm looking at page 28.

2                    THE COURT:  OK.

3                    MR. BOONE:  Under the heading justification.  And this

4       is really more to make the record clear, although it's apparent

5       in the submissions of the parties.  The first sentence says

6       that Blazer paid NCAA Division 1 basketball players.  He didn't

7       pay basketball players unless it was at the direction of the

8       government.  He was paying other college athletes.  They were

9       actually football players he testified to.

10                   THE COURT:  OK.

11                   MR. BOONE:  And then on the third paragraph, sort of

12      the middle of the paragraph, it says "as a result of two-year

13      extensive and proactive cooperation ..." his cooperation was

14      longer than two years.

15                   THE COURT:  What paragraph?

16                   MR. BOONE:  In the third paragraph under the

17      justification heading.

18                   THE COURT:  How many years?

19                   MR. BOONE:  At least three years before charging, and

20      then obviously he continued to help at the trial.

21                   THE COURT:  OK.

22                   MR. BOONE:  And then lastly, your Honor, another sort

23      of more minor semantic recommendation, this actually goes back

24      to the beginning.  I'm looking at paragraph 6.

25                   THE COURT:  OK.

K257BLAS

1          MR. BOONE:  And let me know if you want me to read it.

2     I think it's just missing some words.  It refers to payments

3     without sort of saying what those payments are.

4          THE COURT:  OK.

5          MR. BOONE:  So what I would suggest is after it says

6     "Blazer as a financial advisor or business manager" I would add

7     the following:  "made payments to student athletes at various

8     universities in exchange for the student athletes' agreement to

9     retain Blazer as a financial advisor or business manager," and

10    then I would say "which payments were concealed."

11         THE COURT:  OK.  "In exchange for their agreement to

12    retain Blazer as a financial advisor" --

13         MR. BOONE:  "Or business manager."

14         THE COURT:  OK.

15         MR. BOONE:  That's it.

16         THE COURT:  OK.  Thank you.

17         And I take it, Mr. Dietz, you have no objections to

18    any of those changes.

19         MR. DIETZ:  That's correct, your Honor.

20         THE COURT:  OK.  Although I am not required to impose

21    a sentence within the sentencing range calculated under the

22    guidelines, I am required to consider the guidelines in

23    imposing sentence, and in order to do so I do need to calculate

24    the applicable sentencing range.  Does either side object to

25    the calculation set forth in paragraphs 63 to 75 of the PSR?

K257BLAS

1          MR. BOONE:  Not the government.

2          THE COURT:  Actually because of the new one it's at

3      paragraphs 68 through 81.

4          Mr. Dietz, any objection?

5          MR. DIETZ:  No, your Honor.

6          THE COURT:  Very well.  I have reviewed the

7      calculation, and I agree with the probation probation's

8      calculation.  Accordingly, I find that the total offense level

9      for Counts One, Two, Four and Five is 26, and I further find

10     that because Mr. Blazer has no prior convictions he is in

11     Criminal History Category I, and that yields a sentencing

12     guideline of 63 to 78 months, with a consecutive 24 months on

13     Count Three.

14          And, with that, Mr. Boone, did you wish to be heard

15     prior to the imposition of sentence?

16          MR. BOONE:  Yes, your Honor, briefly.

17          Your Honor, I understand we filed a fairly detailed

18     5K, so I will try not to repeat much of what was said there.

19     Just a few things I do want to highlight for your Honor.

20          First, I think it's worth noting that Mr. Blazer found

21     himself in this position in terms of cooperation because he

22     made efforts to seek cooperation.  He is an individual who was

23     not charged with a crime at the time he decided to cooperate

24     but in fact had learned of a potential investigation by our

25     office into misconduct he committed, and he on his own had

K257BLAS

1    requested a meeting with the government and a meeting to

2    confess his crimes to the government fully.  And he did that.

3    And, as your Honor is aware, that is not always the case with

4    cooperators.  It is perhaps more often the case that an

5    individual has been charged with a crime, and after charges are

6    brought at some point later then decides to cooperate with the

7    government.  Mr. Blazer stands out for that reason.

8              THE COURT:  Let me ask you this, Mr. Boone, because

9    that was not clear to me from the reading of the PSR.  Where

10   was he in connection with the SEC investigation at the time

11   that he made --

12             MR. BOONE:  At the time charges had not been brought

13   by the SEC, but he was aware that there was an investigation.

14   He had gotten subpoenas asking for documents relating to his

15   business and what ultimately was shown to be a misappropriation

16   of client funds.  He had retained an attorney to help him deal

17   with communications with the SEC.  He had met with the SEC

18   regarding their investigation.  And as we made clear and as he

19   testified to, he had lied in his meetings with them.

20             After that his attorney then learned that the U.S.

21   Attorney's Office also was interested in his conduct relating

22   to the misappropriation of client funds, and it was at that

23   point that he asked his attorney to set up a meeting with both

24   the SEC and the U.S. Attorney's office to come clean about his

25   conduct including his past lies to the SEC.

K257BLAS

1          THE COURT:  And the government at that time -- and by

2     the government I'm including both the SEC and the U.S.

3     Attorney's Office -- was it this office or the office in

4     Pittsburgh?

5          MR. BOONE:  It was the New York SEC office, New York

6     City.

7          THE COURT:  And also the U.S. Attorney's Office?

8          MR. BOONE:  Yes, our office here, yes.

9          THE COURT:  OK.  And am I correct that at that time

10    the only wrongdoing of which they were aware was Mr. Blazer's

11    misappropriation with respect to his financial advising

12    business.

13          MR. BOONE:  That's correct, your Honor.

14          THE COURT:  OK.

15          MR. BOONE:  And that leads to my next point, which is

16    that not only did Mr. Blazer come in on his own to confess, he

17    also volunteered information he believed that showed misconduct

18    by him, and he also volunteered his guidance in helping with

19    the government discover similar misconduct by others.  What I'm

20    talking about there is the NCAA related conduct, his payment of

21    players in exchange for convincing them to retain him once they

22    become professional athletes.  That was not an investigation

23    that the government had ongoing.  He was the one who informed

24    us of his conduct that led us opening an investigation into

25    whether other individuals were committing similar conduct.  And

K257BLAS

1    so you're correct in separating the fact that what he initially

2    came to talk about and what the government knew about was

3    really separate from what ultimately became his cooperation.

4              THE COURT:  And am I correct that -- well, I assume

5    that your office and the SEC investigated the misappropriation

6    with which he was charged.  Am I correct that the monies that

7    he misappropriated went at least substantially exclusively, if

8    not exclusively, to these failed ventures, these failed media

9    ventures.

10             MR. BOONE:  Correct, your Honor.  None of the money

11   quote unquote went into Mr. Blazer's pocket per se.  The money

12   either went to these failed ventures -- there was two movie

13   ventures and a music venture -- or when victims learned that

14   their money ha been moved without their permission and then

15   wanted their money back, Blazer then moved other clients' money

16   to pay them back.  So that encompassed that conduct.

17             THE COURT:  And that totaled approximately what?  2.1?

18   2.3?

19             MR. BOONE:  $2.35 million in terms of total money

20   misappropriated.

21             THE COURT:  Did any of those movies ever get made?

22             MR. BOONE:  They did.  The Mafia movie is out.  It's

23   available at Amazon.  The sibling movie I'm not so sure about.

24   Maybe Mr. Blazer knows.

25             So, your Honor, as I was saying, Mr. Blazer offered

K257BLAS

1      his services to assist the government in starting the

2      investigation that ultimately resulted in the conviction of ten

3      defendants, and he was very much open to making recordings

4      against individuals he knew and attempting to make inroads with

5      individuals he didn't know and make recordings against them as

6      well.  And, as your Honor knows, the amount of recordings was

7      numerous, and the amount of time it took him to make the

8      recordings was extensive.

9              At no point in time, to defendant's credit, did he

10     have any hesitation about making recordings or had any

11     hesitation about essentially flying around the country in an

12     attempt to make recordings.  As we noted in our submission, and

13     as Mr. Blazer would testify at trial, for the early part of the

14     investigation Mr. Blazer was flying around at his own expense,

15     and he was not given a promise of reimbursement for his funds

16     to travel.  He accepted that at any rate because he did want to

17     cooperate, and I think that also is a credit to him and shows

18     the eagerness of his cooperation.

19             And as we point out in our submission, he did all this

20     while maintaining a job.  His job was obviously not to fly

21     around the country making recordings.  He has employment, he

22     has a family he has to take care of, and he maintained his

23     commitment both to his job and to his family despite the fact

24     that he was asked by us to travel many times, often times on

25     short notice at his own expense.

K257BLAS

1          And, your Honor, one thing that's not in our

2     submission that perhaps may be obvious but I still want to

3     point out, is that, you know, the act of making recordings like

4     Mr. Blazer was making is one that can cause a lot of stress for

5     the person making them.  He is obviously doing this covertly;

6     there is always the fear that person you are recording may find

7     out.  So, it is not of a light task to be asked to make

8     numerous phone calls and recordings against individuals and

9     constantly putting yourself in the position where you could be

10    exposed as someone who is cooperating against an individual,

11    and there is always a potential that harm could occur.

12          It's particularly worth noting that in the beginning

13    of the investigation, before the F.B.I.'s involvement, when

14    Mr. Blazer was flying around the country to make recordings, he

15    was going by himself.  It was not as if there was sort of a

16    team of agents in a van next to him in case things went awry.

17    He was on his own making these recordings, which again I think

18    adds to the stress level of his cooperation and shows his

19    commitment to his cooperation.

20          Your Honor obviously knows what the end result was of

21    Mr. Blazer's cooperation.  As we've stated in our submission,

22    it's one of the biggest prosecutions, investigations of

23    corruption in college athletics.  That case simply doesn't get

24    made without Marty Blazer's cooperation.  And I think it's also

25    worth noting that given the news worthiness of the cases that

K257BLAS

1    were ultimately brought, Mr. Blazer has been put forth into the

2    public eye as a public figure of sorts.  There has been a

3    profile of him in the Wall Street Journal.  There have been

4    articles of him in Sports Illustrated.  We learned this morning

5    apparently there is going to be an HBO documentary about the

6    cases which I suspect will mention Mr. Blazer's cooperation.

7    So, his cooperation is known, and that's something he will have

8    to live with for the rest of his life.  And when the case

9    initially was charged, there were obviously attempts by the

10   media to interview him and his family members, neighbors and

11   friends of that nature, further outing his cooperation and I am

12   sure causing sort of further stress to Mr. Blazer.  And again

13   his cooperation as it relates to the NCAA cases was proactive;

14   it didn't stem from him sort of being involved in an ongoing

15   cooperation.  It stemmed from him wanting to help with the

16   investigation.

17          So, for all those reasons, your Honor, we do move

18   under 5K1.1, we do want your Honor to consider and take

19   seriously -- as I'm sure your Honor will -- Mr. Blazer's

20   cooperation.

21          And just to add, throughout all of this Mr. Blazer has

22   been nothing but courteous to all the law enforcement officers

23   involved.  He has never complained about the amount of

24   cooperation that was required of him or the fact that he was

25   given no indication of when his cooperation would end.  And it

K257BLAS

1    did in fact continue for several years, and he didn't express

2    any hesitation in continuing that, again, in the government's

3    view, all to his credit.  We ask that all of this be taken into

4    consideration when sentencing Mr. Blazer.

5              THE COURT:  Thank you, Mr. Boone.

6              Mr. Dietz, did you wish to be heard?

7              MR. DIETZ:  Very briefly, your Honor.  Judge,

8    Mr. Boone has described Mr. Blazer's cooperation, and there is

9    no way I can possibly do it any better at this point.  The

10   Court sat through the trials; you heard Mr. Blazer testify.

11             I will just confirm with the government, I assure you

12   I read the government's sentencing submission, and I thought,

13   wow, people are going to think that we coordinated our

14   sentencing submissions.  I can assure the Court we did not.  I

15   have been practicing federal criminal law for over 20 years,

16   and I have represented cooperators, and I don't know if I've

17   ever seen or heard of a case that I've been personally involved

18   in which has had this extensive cooperation.

19             Judge, one thing I want to point.  Mr. Boone

20   referenced the SEC investigation, and it is true that

21   Mr. Blazer did initially hire counsel in that case, and he had

22   counsel, however, he quickly learned he couldn't afford

23   counsel, and he ultimately proceeded to the jury in that case,

24   including the negotiation and an agreement to a consent

25   judgment and consent order as a pro se litigant.  He

K257BLAS

1    represented himself.  I'm involved in this case because I am a

2    friend of Marty Blazer.  Maybe he got lucky initially and has a

3    friend who does federal criminal defense work, and he came to

4    me.  He initially did not come to me because he was

5    embarrassed.  He hired another attorney.  He had an attorney

6    representing him in the criminal matter who had no experience

7    in federal court.

8            This is going to the point that I want the Court to

9    understand -- and I think Mr. Boone said it and I said it --

10   Mr. Blazer did not personally financially benefit from his

11   crimes.  He did what he did and he absolutely accepts

12   responsibility for it, but he wasn't buying cars, wasn't buying

13   houses, wasn't buying assets, wasn't securing a lavish

14   lifestyle for himself.  He screwed up.  He took clients money

15   to invest, and when the money ran out he took more clients'

16   money to invest.  In fact, he actually paid some of his clients

17   back with other client's money.  So, while he misappropriated

18   2.3, I think the actual loss to his clients has been more

19   around 1.8.  And he has agreed, and he has a settlement

20   agreement with the SEC on that.

21           THE COURT:  What are the financial requirements of

22   that agreement?  And where is Mr. Blazer with respect to those

23   requirements?

24           MR. DIETZ:  I believe it's $1.8 million consent

25   judgment.  The SEC has taken no action on it until this case is

K257BLAS

1    over.  Frankly, Judge, I believe that his wages will be

2    garnished after sentencing.  That's my understanding.  I do not

3    represent him in the SEC matter, but frankly that was resolved

4    before I ever got involved in this case, so it's been quiet.

5              THE COURT:  OK.

6              MR. DIETZ:  Judge, I know the Court's job is to

7    sentence Mr. Blazer today, and I would ask the court to

8    sentence all of Marty Blazer, not just the Marty Blazer who

9    committed these crimes, but the Marty Blazer who cooperated,

10   the Marty Blazer who has not been described in the media, the

11   family man Marty Blazer.

12             Judge, his wife Trisha is here today in the courtroom

13   in support of him.  She has submitted a letter to the Court.

14   His cooperation has had substantial impact on his family.

15   Today for example, today is his 14 year old daughter's

16   birthday, and he is standing here in federal court to be

17   sentenced for committing federal felonies.  It's affecting him.

18   He has told me how disappointed in himself that he is standing

19   here in federal court instead of home.

20             I don't want to rehash everything that's in my

21   sentencing information because I have included a lot of

22   information, Judge.  I would just ask the Court to consider the

23   overall nature of who Marty Blazer is, his cooperation with the

24   government.  And, Judge, he still -- as the NCAA letter

25   suggests, he has had some reservations in his cooperation with

K257BLAS

1    the NCAA about disclosing certain things that are part of this

2    federal criminal investigation.  After he is sentenced, after

3    these cases are closed, he intends to continue fully

4    cooperating with the NCAA.

5          Last week, your Honor, I was contacted by a prosecutor

6    in North Carolina.  There is a prosecution currently based on

7    allegations that occurred at the University of North Carolina.

8    A defendant is being prosecuted, and I got a phone call if

9    Marty Blazer would be willing to testify in that case.  That is

10   the end of February.  He is going to cooperate in that case as

11   well.

12         So, I can tell you, Judge, Marty Blazer -- I hear the

13   phrase redemption a lot in the federal criminal arena.  He is

14   doing everything he can from the point of making these mistakes

15   to make a positive impact in this world.  He has tried to help

16   the government.  He is working hard, he is providing for his

17   family.  He is doing things the right way, Judge, and for all

18   the reasons that Mr. Boone has advocated, for the reasons I've

19   advocated in my sentencing submission, I would ask the Court to

20   impose a noncustodial sentence.

21         THE COURT:  Thank you.

22         Mr. Boone, as I recall from the sentencings of

23   Mr. Code and Dawkins, I have not imposed restitution on those

24   because the NCAA or the universities haven't requested

25   restitution.  Am I misremembering that?

K257BLAS

1          MR. BOONE:  That's correct, your Honor.

2          THE COURT:  What is the government's position on

3    either restitution or forfeiture with respect to Mr. Blazer?

4          MR. BOONE:  So, your Honor, with respect to

5    restitution, as defense counsel pointed out, and as also

6    pointed out in the PSR paragraph 118, Judge Oetken has issued

7    an order against Mr. Blazer for his conduct relating to

8    misappropriation of client funds that requires him to pay -- I

9    have it here -- requires him to pay about $1,558,647 as well a

10   fee associated with interest and a fine.

11          I have talked to the SEC attorneys handling this case.

12   My understanding is that the money that Mr. Blazer gives to the

13   SEC pursuant to that order will then ultimately go to the

14   victims who are part of his misappropriation.  Given that the

15   victims will be -- or there is an order in place for them to be

16   made whole from his misconduct, we are not seeking restitution

17   in light of the fact that the victims already are going to be

18   made whole through a court order of Judge Oetken's.  And that's

19   16 cv 3384, for the record, SEC v. Martin Blazer.

20          THE COURT:  OK.

21          MR. DIETZ:  In terms of forfeiture, your Honor, the

22   parties do disagree as to that, as the government is seeking

23   forfeiture.  The forfeiture amount we are seeking is the amount

24   we reference in our 5K as a total amount of money

25   misappropriated by Mr. Blazer, and that's $2,350,000.

K257BLAS

1          We understand that ultimately Mr. Blazer himself did

2     not profit from the scheme, but we do believe that Second

3     Circuit law makes clear defendant is liable for the full amount

4     of proceeds he controlled, without regard to whether he

5     personally obtained them or transferred them to others.

6          So, in the government's view the amount of money he

7     controlled and controlled improperly was the money he moved

8     without authorization from clients' accounts either to the

9     music or movie ventures, or moved to essentially cover up the

10    fraud by moving money from sort of Client B to Client in an

11    attempt to make client A whole for his initial appropriation.

12          THE COURT:  Let me ask you a question, Mr. Boone.

13    Victims are not entitled to more restitution than they lost,

14    but ought I not in an abundance of caution enter an order of

15    restitution for the amount lost by the victims?

16          MR. BOONE:  Your Honor, we wouldn't necessarily object

17    to that.  I'm not sure sort of what would need to be done on

18    the back end to make sure there is not sort of a double

19    counting for the victims.  I think it would be helpful, if

20    that's your Honor's desire, to just to make it clear in the

21    record the fact that your ultimate goal is not to have victims

22    have double the money.  We wouldn't object to your Honor doing

23    that.

24          THE COURT:  And what is that amount?  I mean is that

25    from paragraph 118?

K257BLAS

1          MR. BOONE:  It is.  And it's also -- I just want to

2      look at our actual submission, and we discuss it there as well.

3          THE COURT:  Wouldn't it be 2.3?

4          MR. BOONE:  Well, if you're talking about restitution,

5      no, because some clients were given money back, so that 1.5 now

6      gives credit for money that was given back to individuals.

7          THE COURT:  We don't have to like do a calculation

8      today, because we have some time even after I impose sentence.

9      I just want to make sure that we don't lose track of that.

10     Because I do believe that under the Act, the Mandatory

11     Restitution Act, I am required to impose restitution, but again

12     obviously to the extent that the victims are being compensated

13     through an SEC proceeding, they are not entitled to more than

14     they lost than perhaps some interest.

15         MR. BOONE:  Correct.

16         THE COURT:  So, why don't you get me some figures.

17         MR. BOONE:  I can.  And, your Honor, if you look at

18     page 5 of our 5K letter under the heading "Blazer's Loss Amount

19     for Securities Fraud," there we calculated the net

20     misappropriation amount to be approximately $1,560, which is

21     essentially what the SEC found.

22         THE COURT:  You mean 1 million.

23         MR. BOONE:  Sorry, $1,560,000.

24         THE COURT:  OK.  OK.  Thank you.

25         Mr. Blazer, you have an absolute right to address the

K257BLAS

1    Court before I impose sentence.  Is there anything that you

2    wanted me to know?

3              THE DEFENDANT:  Would it be OK?

4              THE COURT:  Absolutely.  You can absolutely read, but

5    I would simply ask you because when people read they tend to be

6    a little nervous and they speak fast, so if I could ask you to

7    do it slowly.

8              THE DEFENDANT:  I will.  I will, your Honor.

9              THE COURT:  You can sit down, by the way.  Just speak

10   directly into the microphone.

11             THE DEFENDANT:  There is no justification or excuse

12   for my actions.  I take 100 percent responsibility for every

13   terrible decision I made that brought me here today.  I know an

14   apology to the individuals I harmed will never be enough, but I

15   am deeply sorry.  These guys trusted me to protect them from

16   people who would do what I did to them, and I betrayed their

17   trust.  There hasn't been a moment -- and there will never be a

18   moment in my life -- that I don't deeply regret my actions and

19   know that this shame will forever live with me.  I am truly so

20   very sorry to everyone I hurt, and I wish I could go back in

21   time and stop myself from making those decisions.

22             I want to apologize to my wife and kids for putting

23   them through this.  Trisha, my wife, has had to endure so much

24   over the past eight years or so because of my selfish and

25   arrogant actions.  This has been harder on her than anyone

K257BLAS

else, and it breaks my heart.  She did nothing to deserve this
and yet stood by me and held our family together.  I will never
be able to express how sorry I am I was not a better person for
their sake.  I strive every day to be more deserving of their
love and admiration.

I owe a tremendous debt of gratitude to the U.S.
Attorney's Office and the F.B.I. for giving me the opportunity
to cooperate.  I have the highest regard for who they are and
what they do.  I was always treated with fairness,
professionalism and respect by everyone I encountered.  I
appreciate more than I can ever say the chance they gave me to
do something positive.

I apologize to this Court as well, your Honor, for
having to deal with me in this capacity today.  For you I
realize weighing all of this information takes tremendous time
and consideration.

Your Honor, I am sure countless individuals stand
before you and plead that if you give them the chance they
promise to do better.  No question I have made terrible
mistakes for which there is no excuse or justification.  In the
near six years since I took ownership of those mistakes,
however, I believe I have done better as a result of the chance
afforded to me by the U.S. Attorney.  If granted another chance
by you here today, your Honor, I promise you will never again
see me stand before you under similar circumstances, and I will

K257BLAS

1    use the lessons learned from my mistakes to continue on the

2    right path.  Thank you.

3              THE COURT:  Thank you, Mr. Blazer.  I want in the

4    first instance to note that I grant the government's motion

5    pursuant to 5K1.1, and in deciding what sentence to impose, in

6    addition to the sentencing guidelines, I have considered all of

7    the factors set forth in Section 3553(a) of Title 18 of the

8    United States Code, including as most relevant to this case the

9    nature and circumstances of the offense and Mr. Blazer's

10   history and characteristics.  I have considered the need for

11   the sentence imposed to reflect the seriousness of the offense,

12   promote respect for the law, provide a just punishment for the

13   offense, to afford adequate deterrence to criminal conduct, to

14   protect the public from further crimes, and I have also

15   considered the need -- particularly important in this case --

16   to avoid unwarranted sentencing disparities among similarly

17   situated defendants, and to provide restitution to any victims

18   of the offense.  And because the government has so requested,

19   and I have granted, I have also considered the factors set

20   forth in United States Sentencing Guidelines, Section 5K1.1

21   namely my evaluation of the significance and usefulness of

22   Mr. Blazer's cooperation, taking into account the government

23   assessment, Mr. Blazer's truthfulness, completeness and

24   reliability in his testimony, the nature and extent of his

25   assistance, any injury or risk of danger to Mr. Blazer or his

K257BLAS

family resulting from his cooperation and the timeliness of his

assistance, and having considered all of these factors it is my

intention to impose a sentence of time served on each count of

conviction, to be followed by one year of supervised release.

I will not impose a fine, as I find that Mr. Blazer

will not be able to pay a fine as a result of the other

financial obligations that he has incurred in connection with

his actions.

I will also impose the mandatory special assessment of

$500, which shall be due immediately; restitution in the amount

of $1,560,000 -- if that amount is inaccurate for some reason,

Mr. Boone, I would ask that you correct me in the coming

weeks -- and forfeiture in the amount of $2.35 million.

I believe this sentence is sufficient but not greater

than necessary to comply with the purposes of sentencing set

forth in Section 3553(a)(2) for the following reasons:

I begin, as I must note, by noting that the conduct

for which Mr. Blazer has been convicted is very serious

conduct.  He is a person obviously who knows better.  He is a

sophisticated financial professional in whom individuals repose

their trust and their finances.  You know, as I read the

letters that were submitted on his behalf -- and I absolutely

credit the sincerity of each of the individuals who submitted

these letters.  I read with particular care the letter

submitted by Mr. Blazer's wife and children, and I am able to

K257BLAS

1    determine and conclude that not only did he know better, he

2    taught his family to know better.  He was raised better.  So,

3    it is a matter of great seriousness with which I take the

4    conduct for which he was convicted.

5           Obviously, I understand that he did that and that

6    money did not go directly into his pocket, but they were

7    investments that he hoped would get him additional funds.  So

8    although there was a little wrinkle there in terms of the

9    typical scheme of this type that we see -- it's not your

10   classic pyramid scheme -- it is no less serious at least to my

11   way of thinking.

12          With respect to the NCAA violations, again, this is I

13   think the last of the individuals who will be sentenced in

14   connection with this series of prosecutions.  There has been a

15   lot written and said about whether or not it is appropriate to

16   pay college players.  There is some suggestion that history is

17   moving in the direction of paying college players or providing

18   them with some financial support during the time that they play

19   for universities.  However, it is also the case that the

20   individuals that were prosecuted and convicted knew very well

21   that there were rules that had to be followed.  They knowingly

22   and voluntarily and willfully broke those rules, and those

23   rules as it turns out were also a violation of federal

24   statutes.  And while they were also serious crimes -- indeed

25   they were felonies -- to be sure, they were not the worst of

K257BLAS

1    crimes.  They did not involve drugs.  They did not involve

2    violence.  They did not involve guns.  It's for that reason I

3    believe that myself and the other judges who have had occasion

4    to sentence individuals that have been caught up in this

5    investigation, the sentences that have been imposed have been

6    relatively -- at least for this courthouse -- short.  I believe

7    that my sentence of Mr. Dawkins to one year and one day is the

8    longest sentence that has been received by the individuals

9    involved in these investigations.  But I believe sincerely that

10   the convictions were well deserved, and there are a lot of

11   consequences that come from being convicted of a felony in

12   federal court.

13          So, I take all of that into consideration, and as

14   Mr. Dietz correctly noted I am required by the applicable

15   statutes and sentencing guidelines to consider the entirety of

16   Mr. Blazer's life, to consider both sides of the ledger, and

17   certainly there is much to commend Mr. Blazer for.

18          Let me speak first to the cooperation he provided.  He

19   is an unusual cooperator, in my experience -- and I have been

20   around even longer than Mr. Dietz -- someone who not only

21   provided information, that sort of came in off the street, so

22   to speak, to provide information, but then who engaged in

23   proactive cooperation for as long as he did and basically out

24   of his own pocket.  That is unusual, and obviously he is to be

25   commended for going all in once he decided that it was

K257BLAS

| | |
|---|---|
| 1 | important for him to stop his own criminal activity and then |
| 2 | cooperate with the government in the prosecution of others who |
| 3 | continued to engage in illegal activity. |
| 4 | So, obviously that is a very important part of what I |
| 5 | am required to consider when we sentence under Section 5K1.1. |
| 6 | As part of his cooperation Mr. Blazer testified before me at |
| 7 | the trial of Mrs. Code and Dawkins.  I listened very carefully |
| 8 | to his testimony, as he was a very important part of that |
| 9 | prosecution, and I credited his testimony as obviously the jury |
| 10 | did. |
| 11 | As Mr. Boone noted, Mr. Blazer also agreed to |
| 12 | surreptitiously record others in the course of his cooperation, |
| 13 | and that is activity which implicitly puts someone in a very |
| 14 | precarious position, so all of that gets taken into |
| 15 | consideration. |
| 16 | As I indicated, I read the letters very carefully, and |
| 17 | I have no doubt that, first of all, Mr. Blazer is a good father |
| 18 | who has always been there for his children.  He is an |
| 19 | individual who has always worked, and continues to work, and |
| 20 | will have substantial financial obligations going forward. |
| 21 | However, I do not doubt that he will continue to provide for |
| 22 | his family as best he can. |
| 23 | I also do not doubt -- turning to the deterrence |
| 24 | portion of the statutes -- that with respect to specific |
| 25 | deterrence, that Mr. Blazer will not commit another federal |

K257BLAS

1  offense.  I believe him when he tells me that I will not see

2  him again at least not under these circumstances, so there is

3  no reason for me to believe that there is any term of

4  incarceration that is necessary in order to effect specific

5  deterrence.

6          With all of that, does counsel know of any legal

7  reason, other than what has already been argued, as to why I

8  should not impose the sentence that I have indicated?

9  Mr. Boone?

10          MR. BOONE:  No, your Honor.

11          THE COURT:  Mr. Dietz?

12          MR. DIETZ:  No, your Honor.

13          THE COURT:  In that event, it is the judgment of the

14  Court that Mr. Blazer be sentenced to time served on each of

15  the five counts and one year of supervised release on each

16  count, each of which is to be served concurrently.  The

17  standard conditions of supervised release will be imposed as

18  well as the following special and mandatory conditions.  The

19  mandatory conditions are that you not commit another federal,

20  state or local crime, that you not unlawfully possess a

21  controlled substance and that you must refrain from the

22  unlawful use ever a controlled substance.  You must submit to a

23  drug test within 15 days and at least two drug tests thereafter

24  as determined by probation.  You must cooperate in the

25  collection of DNA as directed by probation.

K257BLAS

1          The special conditions are that you provide the

2     probation officer with access to any requested financial

3     information, and that you not incur new credit charges or open

4     additional lines of credit without the approval of the

5     probation office unless you are in compliance with the

6     installment payment schedule.

7          You are required to pay the mandatory special

8     assessment of $100 on each of the counts of conviction for a

9     total of $500; restitution in the amount of $1,560,000; and I

10    note for the record and will indicate in the judgment of

11    conviction that I understand that there is a separate SEC

12    agreement pursuant to which Mr. Blazer agreed to provide the

13    restitution to the victims of the scheme, and that is not the

14    intention of this Court to provide the victims with any more

15    restitution than that to which they are entitled.  That is to

16    say they are not entitled to double the amount of restitution

17    as a result of both the SEC and the U.S. Attorney's office

18    investigations.

19         I will also enter an order of forfeiture in the amount

20    of $2.35 million.  As I indicated previously, I will not impose

21    a fine, as I find that Mr. Blazer will not be able to pay a

22    fine as a result of the financial obligations that I have just

23    discussed.

24         Are there any open counts or any underlying

25    indictments?

K257BLAS

1          MR. BOONE:  No, your Honor, but in an abundance of

2     caution, we would move to dismiss those.

3          THE COURT:  That application is granted.  That

4     constitutes the sentence of the Court.

5          Mr. Blazer, you actually have a right to appeal the

6     sentence, however, the time within which to do that is very,

7     very limited.  So, Mr. Dietz, will you assure me that you will

8     promptly and thoroughly discuss with Mr. Blazer his right of

9     appeal?

10          MR. DIETZ:  I will.

11          THE COURT:  And Mr. Boone -- rather, Mr. Dietz, do you

12     ever any other applications?

13          MR. DIETZ:  Not at this time, your Honor.

14          THE COURT:  Mr. Boone?

15          MR. BOONE:  No, your Honor.

16          THE COURT:  In that event, that is the sentence of the

17     Court.  Unless there is anything further, we are adjourned.

18          And, Mr. Blazer, good luck to you, sir.

19          THE DEFENDANT:  Thank you, your Honor.

20          - - -

21

22

23

24

25